Mark L. Heaney, SBN #022492
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, MN 55305
T. 952.933.9655
E-mail: mark@heaneylaw.com

E. Michelle Drake*
Joseph C. Hashmall*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. 612.594.5999
F. 612.584.4470
emdrake@bm.net
jhashmall@bm.net
**pro hac vice*

Attorneys for Plaintiff
CECIL C. GARRETT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Cecil C. Garrett, individually and as a representative of the Classes,

Plaintiff,

vs.

Advantage Plus Credit Reporting, Inc.,

Defendant.

CASE NO. 2:21-cv-2082-PHX-DJH

**PLAINTIFF'S UNOPPOSED MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**MOTION**

Plaintiff Cecil C. Garrett ("Plaintiff"), individually and on behalf of the proposed Settlement Class, respectfully moves the Court for preliminary approval of a proposed settlement with Defendant Advantage Plus Credit Reporting, Inc. ("Defendant"). Plaintiff respectfully requests the Court: (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement purposes, (3) direct notice to be distributed to the Settlement Class, and (4) schedule a Final Fairness Hearing. Defendant does not oppose the relief sought in this Motion.

**MEMORANDUM**

Plaintiff, individually and on behalf of those similarly situated, and Defendant (together, the "Parties") have reached a class action settlement to resolve Plaintiff's claims alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b) by failing to maintain reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports it furnished on the Settlement Class Members.

The proposed Settlement provides for $1,000 settlement payments to each of the 91 Settlement Class Members. This is the maximum of the statutory range for FCRA damages, and thus represents an extraordinary result for the Settlement Class. In exchange for the payments, the Settlement Class Members will release only claims that are the subject of this action.

The Settlement was reached only after the exchange of fulsome discovery, data analysis by Plaintiff's expert, third party discovery, and the filing of Plaintiff's motion for class certification. The Settlement is a fair and reasonable resolution of the claims at issue and should be approved. For the reasons outlined below, Plaintiff respectfully requests the Court preliminarily approve the Settlement, direct notice to the Settlement Class, and schedule a Final Fairness Hearing.

## BACKGROUND

### I. Procedural History

On December 8, 2021, Plaintiff filed his initial class action complaint against Defendant, alleging that Defendant had negligently and willfully violated the FCRA, 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in its consumer reporting. (ECF No. 1.) Specifically, Plaintiff alleged that Defendant inaccurately included in his and class members' consumer reports a notation that they were "deceased" when in fact they are alive. (*Id.*) Defendant did this in spite of receiving information the consumers were in fact alive from at least one of the three consumer reporting agencies for whom Defendant acts as a reseller of data. (*Id.*) On July 12, 2022, Plaintiff filed the operative First Amended Complaint ("FAC"), clarifying the class definition and narrowing the asserted claims. (ECF No. 41.) The FAC alleges that Defendant violated 15 U.S.C. § 1681e(b) on behalf of a class of consumers who had a consumer report furnished by Defendant to a third party during the class period that contained a notation that the consumer was deceased from at least one credit bureau and where one or more other notations from other credit bureaus did not also contain a deceased notation, and where at the time the report was issued, the consumer was not deceased. (*Id.*)

Defendant disputes Plaintiff's allegations. Defendant answered the initial complaint on January 31, 2022 (ECF No. 15) and the FAC on July 25, 2022 (ECF No. 42). In March 2022, the Parties commenced discovery. Discovery was thorough, including third party discovery of Defendant's data vendor, two depositions of Defendant's representatives, and data analysis by Plaintiff's retained expert. On November 11, 2022, Plaintiff filed his Motion for Class Certification. (ECF No. 50.)

Following the filing of the Motion for Class Certification, the Parties began to engage in arms' length negotiations through counsel to explore resolution, including the exchange of numerous letters, emails and telephone calls. On December 8, 2022, the

Parties agreed on settlement terms in principle on a classwide basis and notified the Court of the same. (ECF No. 63.) The Parties then worked to formalize the resolution in the Settlement Agreement, which the Parties now bring before the Court for preliminary approval.[1]

## II. The Settlement Agreement

### A. Overview of Terms

The Settlement Class is defined as:

> all natural persons who were the subject: (1) of a consumer report furnished by Defendant to a third party from December 8, 2019 through November 2021; (2) where the consumer report contained a notation that the consumer was deceased from at least one of Experian, Equifax, or Trans Union; and (3) where at least one other of Experian, Equifax, or Trans Union did not contain a deceased notation.

(Settlement Agreement ("SA") ¶ 1.21.) The Parties agree that the Settlement Class consists of 91 individuals. (*Id.*)

Defendant will pay $96,000 as a common fund for the Settlement Class. (*Id.* ¶ 1.12.) Plaintiff will request $5,000 from the common fund as a Class Representative Award. (*Id.* ¶ 4.3.) Should the Court approve this Award, then following its deduction from the fund, Settlement Class Members will each receive equal payments of $1,000. (*Id.* ¶ 4.1.) Should any payment checks remain uncashed after the check negotiation period, the balance will be donated to Public Justice as a *cy pres* recipient. (*Id.* ¶ 4.6.)

Class Counsel will also request the Court approve a payment by Defendant separate from the common fund as attorneys' fees, and reimbursement for out-of-pocket expenses, including those of settlement administration, in an amount not to exceed $99,000. (*Id.* ¶ 1.15.)

In exchange for their monetary benefits, Settlement Class Members will release claims that they have under 15 U.S.C. § 1681e(b) of the FCRA, and state statutory or common law analogs, for statutory, actual, and punitive damages, relating to Defendant's

[1] The Settlement Agreement with Exhibits is attached hereto as Exhibit 1.

inclusion of a deceased notation in a consumer report on Settlement Class Members provided to a third party. (*Id.* ¶ 4.2.)

**B. Form of Notice**

Given the small size of the Settlement Class, and in order to avoid the expense of hiring a third party, Class Counsel will serve as the Settlement Administrator. All Settlement Class Members will be sent the Notice in substantially the same form as attached to the Agreement as Exhibit A, via U.S. Mail to the last known address, as updated by appropriate public records. (SA ¶ 3.2.2.) The Notice contains detailed information about the Settlement, including the information required by Fed. R. Civ. P. 23(c)(2)(B). (*Id.* at Ex. A.) Additionally, the Notice will inform Settlement Class Members how to obtain additional information about the Settlement, including the URL for the Settlement Website and deadlines by which to take action should they so choose. (*Id.*) The Notice will also enclose a W-9 form and return-addressed, prepaid envelope, for Settlement Class Members to complete and return if they choose, in order to not have any standard withholdings from their settlement payment. The Notice includes an instruction regarding the W-9 form to explain this to the Settlement Class Members. (*Id.*)

Class Counsel will establish and administer the Settlement Website referenced in the Notice, which will contain copies of relevant pleadings (*e.g.*, the FAC, the Settlement Agreement, the briefing for settlement approval and copies of any orders issued by the Court in connection with same). (*Id.* ¶ 3.2.3.) Class Counsel will also include a toll-free telephone line and email address on the Notice for Settlement Class Members to use to send inquiries to Class Counsel regarding the Settlement. (*Id.* at Ex. A.)

**C. Opt-Outs and Objections**

The Notice will inform all Settlement Class Members of their right to opt out of or object to the Settlement and of the associated customary deadlines. (*Id.* at Ex. A.) Settlement Class Members who choose to opt out must send, by the Opt Out & Objection Deadline, a written statement to Class Counsel indicating their desire to be excluded from

the Settlement Class in this action, and be signed by the Settlement Class Member, and include their name, address, phone number, and last four digits of their Social Security number. (*Id.* ¶ 3.2.4.) To properly object, a Settlement Class Member must file their objection with the Court and serve copies on the Parties' Counsel, by the Opt Out & Objection Deadline. The objection must include the Class Member's name, address, phone number, be signed by the Class Member and include a notation that it is for the above-captioned matter. Additionally, the objection must contain the basis for any objections with specificity including documentation, and if the objector is represented by counsel, it must state that counsel's contact information and whether they intend to appear at the Final Fairness Hearing. (*Id.* ¶ 3.2.5.)

Fourteen (14) days prior to the Final Fairness Hearing, Class Counsel will provide a declaration to the Court, attesting to the distribution of Notice, as well as identifying any opt outs received. (*Id.* ¶ 3.2.4.)

**D. Attorneys' Fees, Costs, and Class Representative Service Award**

As noted above, the Settlement contemplates Class Counsel petitioning the Court for attorneys' fees and out-of-pocket expenses, including those of settlement administration, in an amount not to exceed $99,000, to be paid separately from the fund by Defendant. (SA ¶¶ 1.15; 4.4.) It also contemplates Plaintiff requesting a Class Representative Award in the amount of $5,000, to be paid from the fund. (*Id.* ¶ 4.3.) These requests will be made through written motion to the Court, to be filed fourteen (14) days prior to the Opt Out and Objection Deadline, and the papers will be posted to the Settlement Website within 24 hours of filing, for Class Members to review. (*Id.* ¶ 4.4.) Approval of the Settlement Agreement is not contingent upon the full amount of any requested fees, costs, or service award being approved. (*Id.* ¶¶ 4.3, 4.4.) Further, the Parties did not negotiate these amounts until after the classwide relief had been agreed upon. (*Id.*)

## ARGUMENT

Federal courts favor the voluntary resolution of litigation through settlement, particularly in the class action context. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999) ("There is a strong judicial policy in favor of settlements in complex class actions"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) *on reh'g*, 670 F.2d 71 (6th Cir. 1982); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999).

Approval of a Rule 23 class action settlement is a two-step process. At the first stage, the court determines whether the settlement is within the range of possible approval. The court also conducts a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). If the settlement is preliminarily approved, a final approval hearing will be scheduled, and notice will be sent to the proposed settlement class regarding the settlement. At the second stage, following the final fairness hearing, final approval will be granted if the parties establish that a settlement is fair and adequate.

For the reasons set forth below, the Court should: (1) preliminarily approve the Parties' proposed Settlement, (2) certify the Settlement Class for settlement purposes only, (3) approve the notice plan for distribution, (4) appoint Plaintiff as Class Representative, and Plaintiff's Counsel as Class Counsel and approve them as the Settlement Administrator, and (5) set a date for the Final Fairness Hearing.

### I. The Settlement Class Should be Certified For Settlement Purposes

#### A. The Settlement Class Meets the Requirements of Rule 23

To certify a class, the Court must find that the prerequisites of Rule 23(a) are met, and that the case falls within at least one of the categories listed in Rule 23(b). The same standards generally apply where certification is sought for settlement purposes only, although issues of manageability at trial are not relevant. *Amchem Prods., Inc.* 521 U.S. at 620.

The Settlement Class here is so certifiable. Plaintiff incorporates herein his briefing on the Motion for Class Certification, which addresses the Rule 23 requirements at length. (ECF No. 50.) Rule 23(a) provides that a case is appropriate for certification as a class action if: "the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (numbering omitted). Rule 23(b)(3) provides that a case may be certified as a class action if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

1. <u>Numerosity and Ascertainability</u>

Members of a certifiable class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No specific numerical threshold is required; instead, the law "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).

The Settlement Class here is plainly numerous and ascertainable. As noted above, the Parties agree that the Settlement Class has 91 members, and the identity of the Settlement Class Members has been ascertained.

2. <u>Commonality</u>

To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the

class." Satisfaction of the commonality requirement requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also id*. at 359 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]") (citation omitted).

Here, the Settlement Class raises common factual questions, because each member is defined with reference to Defendant's standard policies and practices, *i.e.*, its decision to report individuals as deceased, even when it has contrary information in its possession. Moreover, the Settlement Class raises common legal issues of FCRA liability and willfulness, mirroring FCRA cases in which courts have found commonality satisfied where a consumer reporting agency reported inaccurate information pursuant to a uniform policy or procedure. *See, e.g.*, *Feliciano v. CoreLogic Rental Property Sols., LLC*, 332 F.R.D. 98, 106 (S.D.N.Y. 2019);[2] *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 304 (N.D. Cal. 2015) (finding common question of whether "there [were] reasonable procedures in place (here, the name-only logic) to ensure the maximum possible accuracy of the information"); *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 418 (N.D. Cal. 2014) (finding "question of whether using the name-only matching logic assures maximum accuracy"); *Soutter v. Equifax Info. Servcs., LLC*, 307 F.R.D. 183, 205 (E.D. Va. 2015) (finding consumer reporting agencies' procedures to "raise a common contention of reasonableness that can be resolved with common answers on a classwide basis").

3. Typicality

---

> This case presents a number of common questions. ... These include whether defendant maintained a uniform practice of publishing inaccurate Housing Court disposition statuses; whether such inaccurate reporting violates the FCRA and NYFCRA; whether defendant followed reasonable procedures to ensure the accuracy of its records; whether the alleged conduct was willful; the appropriate amount of statutory damages; and the possible award of punitive damages.

*Id.*

Rule 23(a)(3) requires that the claims of the named plaintiff be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). It focuses on "the nature of the claim . . . of the class representative, and not . . . the specific facts from which it arose." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508).

Here, Plaintiff's claims are typical of those of the Settlement Class. Like every member of the Settlement Class, he was the subject of a consumer report that contained an inaccurate deceased indicator, due to Defendant's alleged inadequate and unreasonable uniform procedures. Plaintiff's proof regarding the reasonableness of Defendant's procedures, whether Defendant acted willfully, and the proper amount of statutory and punitive damages would advance not only Plaintiff's claims but the claims of all Settlement Class Members. Typicality is satisfied.

4. Adequacy

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Legal adequacy turns on two questions: (1) whether the class representative's interests are common with, and not antagonistic to, the class's interests; and (2) whether the class representative is "able to prosecute the action vigorously through qualified counsel." *Whiteway v. FedEx Kinko's Office and PrintServs., Inc.*, 2006 WL 2642528, at *7 (N.D. Cal. Sept. 14, 2006) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). Both are satisfied here.

First, Plaintiff has no conflict with Settlement Class Members, as each has the same interest in receiving relief. Plaintiff has been actively involved in this litigation, staying in communication with Counsel throughout investigation, litigation, and settlement negotiations, reviewing and approving the complaints and the Settlement Agreement, and

putting the best interests of the Settlement Class Members first. As noted in his declaration submitted in support of class certification, he has been committed to obtaining relief on a classwide basis. (ECF No. 51, Garrett Decl. ¶ 7.) Second, Plaintiff has secured counsel that has been appointed as lead counsel in dozens of FCRA class actions. (ECF No. 53, Drake Decl. ¶¶ 8-16, Exs. 5, 6.) Local counsel Mark Heaney is also well-versed in consumer litigation. (*Id.* ¶ 17.) Accordingly, Plaintiff and his Counsel are adequate.

**B. The Requirements of Fed. R. Civ. P. 23(b) Are Satisfied**

Rule 23(b)(3) provides that "[a]n action may be maintained as a class action if the prerequisites of [Rule 23(a)] are satisfied, and in addition[,] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (citing Fed. R. Civ. P. 23(b)(3)) (modification in original).

1. <u>Predominance</u>

A plaintiff must demonstrate the superiority of maintaining a class action and show "'that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3)). "[T]he focus of the predominance inquiry" is whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Amgen*, 568 U.S. at 469 (citation omitted). It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).

Here, common questions predominate: (1) whether Defendant's reporting of contradictory information about whether a consumer was alive was a reasonable

procedure to assure maximum accuracy; (2) whether Defendant's conduct was willful; and (3) the proper measure of statutory and punitive damages. As discussed above, these issues dominate this litigation, and do not require individualized inquiry.

2. Superiority

Federal courts have long regarded "consumer claims" like those presented here as "particularly appropriate for class resolution." *Amchem*, 521 U.S. at 625; *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Many opinions … give consumer fraud as an example of a claim for which class treatment is appropriate."); *see also Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395 (N.D. Ill. 2006) ("Consumer claims are among the most commonly certified for class treatment[.]").

Class Counsel are unaware of any suits brought on an individual basis against Defendant related to its deceased reporting, and thus it is doubtful that any Settlement Class Members would prefer separate actions, and if they do, they have the option to opt out of the Settlement to do so. Class litigation is not only the most efficient means of adjudicating these disputes; it is the only means. Lastly, there are no foreseeable case management issues that should preclude class certification. Accordingly, superiority is met.

## II. The Settlement is Appropriate for Preliminary Approval

At the preliminary approval stage, the Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. *See* Fed. R. Civ. P. 23(e)(2). The Court must make an initial determination concerning whether the settlement

> (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.

*Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011); *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009). The proposed Settlement Agreement in this case more than meets the standard for preliminary approval.

### A. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

As recounted above, the Settlement in this case was the result of arms' length negotiations after substantial pre-mediation discovery. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Riker v. Gibbons*, No. 3:08-cv-115, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"). The Settlement here was reached after substantial informal and formal discovery and settlement discussions between the Parties' counsel.

The Settlement was only reached after a year of litigation and substantial discovery, including depositions, third party discovery, and document and data productions. Plaintiff and Defendant were able to fully assess the strength of their respective claims and defenses prior to settlement. Further, the Settlement was reached through arms' length negotiations through experienced counsel. Consequently, the circumstances surrounding the Parties' settlement negotiations support a finding that the Settlement is fair.

Additionally, Plaintiff's Counsel are highly experienced in consumer class action litigation and FCRA litigation in particular. (*See generally* ECF No. 53.) Plaintiff's Counsel endorse the Settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g., In re MicroStrategy Sec. Litig.*, 148 F. Supp. 2d 654, 665 (2001). Indeed, the settlement amount is in line with, and for some cases greater than, recoveries in other settlements for similar claims, as discussed further below.

**B. The Settlement Has No Deficiencies**

This Settlement achieves a remarkable recovery for the Settlement Class and contains none of the deficiencies which can stand in the way of judicial approval. The only contemplated deduction from the settlement fund, the Named Plaintiff Service Award, requires judicial approval, and the Settlement is not contingent upon approval of the requested amount. The totality of the settlement fund will then be paid out to Settlement Class Members, and there is no reversion of any funds to the Defendant.

Moreover, the contemplated request for attorneys' fees and costs is also reasonable. As will be set forth in more detail in Class Counsel's forthcoming fee application, Counsel's actual fees and costs exceed what will be requested in the petition. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) (finding fees that were less than class counsel's lodestar to be reasonable). The amount requested is reasonable here because, even if the Court grants the full fee request, Counsel will still be receiving less than their lodestar, while members of the Settlement Class will be receiving an impressive full recovery of their maximum statutory damages. And of utmost importance, the attorneys' fees and costs will not deplete the amount available to Settlement Class Members, and instead were negotiated to be paid separately by Defendant, subject to approval by the Court.

**C. The Settlement Does Not Grant Preferential Treatment**

Preferential treatment is not a concern in this case. The Settlement calls for the certification of a single class. Every participating Settlement Class Member will be treated equally and have an equal opportunity to share in the settlement fund. When the fund is paid out, all Settlement Class Members will receive checks for the same amount.

The Settlement also calls for a modest, $5,000 service award for the Named Plaintiff, but that requested award is subject to the Court's review and approval, and is supported by his involvement and dedication in this case. (*See supra* I.4.) Furthermore, the Ninth Circuit has recognized that service awards to named plaintiffs in a class action

are permissible and do not render a settlement unfair or unreasonable. *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–69 (9th Cir. 2009).

**D. The Settlement Falls Well Within The Range of Approval**

The Settlement in this case is impressive when considering the range of possible recoveries for the Settlement Class, the number of procedural and merits-based hurdles between Plaintiff and a final judgment, the significant uncertainties of a final judgment for Plaintiff, and Defendant's intent to vigorously oppose class certification if the case were to proceed.

In light of these factors, the proposed settlement amount is substantial. Plaintiff filed this case seeking statutory damages under the FCRA, which provides for between $100 and $1000 for each willful violation. 15 U.S.C. § 1681n(a)(1). The FCRA itself does not provide any guidance to courts in choosing the appropriate recovery for a statutory violation, *see* 15 U.S.C. § 1681n(a)(1), but in determining the amount of statutory damages to impose pursuant to the FCRA, courts have looked to "the importance, and hence the value, of the rights and protections" at issue in the case. *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1180, 1211 (W.D. Ok. 2010). The monetary recovery of $1,000 per class member is 100% of the likely award if this case had proceeded all the way through a final judgment in Plaintiff's favor, and is an excellent recovery for the Settlement Class. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The recovery that each Settlement Class Member will receive is also considerably higher than recoveries in other similar settlements for claims for inaccurate reporting. *See*,

*e.g.*, *Pang v. Credit Plus*, No. 1:21-cv-00122, ECF No. 61 (D. Md. 2021) (final approval of settlement regarding deceased reporting where class members needed to file claim to recover; recovering class members received roughly $430); *Roe v. IntelliCorp Records, Inc.*, No. 12-2288, ECF No. 139 (N.D. Ohio June 5, 2014) (final approval of settlement of inaccurate reporting, and other FCRA claims, providing for $50-$270 net per class member); *Ryals v. HireRight Sols. Inc.*, No. 09-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) (final approval of settlement involving §1681e(b) claims, providing $15-$200 *gross* per class member recovery); *Ori v. Fifth Third Bank, Fiserv, Inc.*, No. 08-432, ECF No. 217 (E.D. Wis. Jan. 10, 2012) (final approval of settlement of inaccurate mortgage loan reporting, claims-made, each claimant receiving approximately $55); *Speers v. Pre-Employ.com, Inc.*, No. 13-1849, ECF No. 83 (D. Or. Feb. 10, 2016) (final approval of settlement of failure to maintain strict procedures when reporting adverse public record information, resulting in approximately $153 net per class member); *Villaflor v. Equifax Info. Servc. LLC*, No. 09-329, ECF No. 177 (N.D. Cal. May 3, 2011) (final approval of settlement of §1681e(b) claims, providing credit monitoring for class members with a retail value of $155).

The recovery provided for in the Settlement is thus in line or exceeds what Plaintiff may have received had he prevailed at trial. Establishing liability in this case, however, was far from certain. The FCRA is not a strict liability statute. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001). Additionally, a FCRA plaintiff can recover statutory damages only where the defendant has acted willfully. 15 U.S.C. §§ 1681n(a)(1). If the matter were litigated, in addition to its other merits and standing arguments, Defendant would have vigorously contested the question of willfulness, including the argument that Defendant's interpretation of its statutory obligations was objectively reasonable, and therefore that any violation necessarily was not willful under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) ("a company subject to FCRA does not act in reckless disregard . . . unless the [challenged] action is not only

a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). The outcome of Plaintiff's claims, therefore, cannot be certain. *See Domonoske v. Bank of Am.*, 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) (approving final settlement in the FCRA context and observing that "proof of willfulness seems an onerous task with a highly uncertain outcome").

Viewed in the context of the significant litigation risks faced, Defendant's defenses and anticipated motion practice, as well as the substantial delay and costs that Settlement Class Members would have experienced in order to receive proceeds from an adversarially-obtained judgment, not to mention the judicial resources required, this Settlement is in the best interests of the Named Plaintiff and the Settlement Class Members, and should be approved.

## III. The Proposed Notice Plan Satisfies Rule 23

Following preliminary approval, the Settlement Class Members must be given notice concerning the nature of the Settlement and of their rights. Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class: for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members.

The Parties' proposed Notice Plan satisfies all of these requirements. The Class Notice will be sent via U.S. mail to each of the 91 Settlement Class Members. Moreover, Class Counsel will operate a Settlement Website on which information regarding the Settlement, the Notice, and important litigation documents will be posted. The Notice provides information about the settlement terms, Settlement Class Members' rights and the deadlines by which to exercise them.

This notice program meets the requirements of Fed. R. Civ. P. 23 and should be approved. *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'").

**IV. The Proposed Approval Hearing Plan is in the Best Interests of the Class**

Rule 23 requires a hearing before the Court grants final approval of a settlement, but not prior to preliminary approval. *See* Fed. R. Civ. Pro. 23(e)(2). The Parties propose that the Court rule on this Motion for Preliminary Approval without a hearing, and set a virtual hearing for the Final Fairness Hearing. A virtual hearing will make the proceedings accessible to any Settlement Class Members or objectors who wish to observe the hearing or be heard by the Court – none of whom will have to travel or appear in person if they wish to be heard. Plaintiff's Counsel will work to ensure that any individuals who wish to observe or participate in the hearing have access to the information required to access and participate in the Final Fairness Hearing. As has been made clear by the experience of courts throughout the pandemic, this remote option will be the most fair and efficient method of conducting the Final Fairness Hearing.

**CONCLUSION**

Based on the foregoing, the Court should grant Plaintiff's Motion and enter the Preliminary Approval Order.

Respectfully submitted,

Dated: January 23, 2023

BERGER MONTAGUE PC

By: /s/Joseph C. Hashmall
E. Michelle Drake, *pro hac vice*
Joseph C. Hashmall, *pro hac vice*

*Attorneys for Plaintiff Cecil C. Garrett*