**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Cecil C Garrett,

            Plaintiff,

v.

Advantage Plus Credit Reporting
Incorporated,

            Defendant.

No. CV-21-02082-PHX-DJH

**AMENDED ORDER**

**This Order amends the Court's August 31, 2023, Order (Doc. 68), with respect to page 23 lines 25–28 setting the in-person Final Approval Hearing.  The Hearing shall be moved to Courtroom 605 on January 17, 2024, at 10:00 AM at the United States District Court for the District of Arizona, Sandra Day O'Connor U.S. Courthouse, 401 West Washington Street, Phoenix, AZ 85003-2158.**

This class action suit arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.  Plaintiff Cecil C. Garrett ("Plaintiff") filed a First Amended Class Action Complaint ("FAC") (Doc. 41) against Defendant Advantage Plus Credit Reporting Incorporated ("Advantage").  On December 8, 2022, the parties filed a "Notice of Settlement and Joint Motion to Stay Case Deadlines" (Doc. 63) indicating they resolved the claims in the FAC.  (Doc. 63 at 1).  Plaintiff has since filed an "Unopposed Motion for Preliminary Approval of Class Action Settlement" (Doc. 65) under Federal Rule of Civil Procedure 23.  The Court will grant Plaintiff's Unopposed Motion provided that the parties make certain revisions to their supporting documents.

1    **I.      Background**

2         Plaintiff is a "consumer" as defined by the FCRA.   (Doc. 41 at ¶ 16 citing

3    15 U.S.C. § 1681a(c)).   Advantage is a "consumer reporting agency" ("CRA") as defined

4    by the FCRA.   (*Id*. at ¶ 18 citing 15 U.S.C. § 1681a(f)).   That is, Advantage assembles

5    consumer credit information "for the purpose of furnishing consumer reports to third

6    parties." 15 U.S.C. § 1681a(f).

7         **A.      Plaintiff's First Amended Class Action Complaint**

8          On July 12, 2022, Plaintiff filed the FAC against Advantage on behalf of himself

9    and other similarly situated consumers.   (Doc. 41 at ¶ 63).   Plaintiff brought a single

10   cause of action: Count I for violation of 15 U.S.C. § 1681e(b).    (*Id*. at ¶¶ 70–79).

11   Plaintiff alleged Advantage failed to follow reasonable procedures to assure maximum

12   possible accuracy when it "assembled, merged, and resold patently false consumer

13   reports concerning Plaintiff and [similarly situated consumers], incorrectly indicating that

14   they were deceased."   (*Id*. at ¶ 73).   He further claimed Advantage's violation of the

15   FCRA was willful and so it is liable for statutory damages under 15 U.S.C. § 1681n(a).

16        On November 11, 2022, Plaintiff filed his original Motion to Certify Class

17   (Doc. 50).   This prompted the parties to engage in arm's length negotiations.   (Doc. 63).

18   To resolve Plaintiff's Count I, the parties ultimately formalized a Settlement Agreement

19   & Release (Doc. 65-1) (the "Proposed Settlement Agreement" or "Proposed Settlement")

20   and Class Action Settlement Notice (*Id*. at 23–29) (the "Proposed Settlement Notice" or

21   "Proposed Notice").   Below is an overview of the parties' agreed upon terms.

22        **B.      The Proposed Settlement Agreement**

23        The parties signed the Proposed Settlement Agreement on January 20, 2023.

24   (*Id*. at 19–20).   The Proposed Settlement Class ("Proposed Class" or "Proposed Class

25   Members") consists of ninety-one (91) individuals and is defined as follows:

26        all natural persons who were the subject: (1) of a consumer report furnished
     by [Advantage] to a third party from December 8, 2019 through November
27   2021; (2) where the consumer report contained a notation that the consumer

28

- 2 -

was deceased from at least one of Experian, Equifax, or Trans Union;[1] and (3) where at least one other of Experian, Equifax, or Trans Union did not contain a deceased notation.

(*Id.* at 6 ¶ 1.21).  Advantage agrees to pay $96,000 into the Settlement Fund, from which Plaintiff would be paid $5,000 as a Service Award and each Proposed Class Member would be paid $1,000.  (*Id.* at 5 ¶¶ 1.12–13, 13 ¶ 4.3).  The parties intend any unclaimed, remaining funds be donated to Public Justice as a *cy pres* recipient.  (*Id.* at 14 ¶ 4.6).  Advantage also agrees to pay $99,000 into a separate Settlement Attorneys' Fees and Costs Fund.  (*Id.* at 5 ¶ 1.5).  Plaintiff intends to petition the Court to approve the distribution of fees in an amount not to exceed $99,000.  (*Id.*)

In exchange for the Proposed Settlement, Plaintiff and the Proposed Class agree to release all claims of any kind or nature, known or unknown, that they may have as a result of the of the inclusion of a deceased indicator or deceased notation on a consumer report.  (*Id.* at 12 ¶ 4.2).

## C.     The Proposed Settlement Notice

The Proposed Settlement details the parties' intended Notice Plan.  (*Id.* at 7 ¶ 3.2). Plaintiff's Counsel will act as the Settlement Administrator "[g]iven the small size of the [Proposed] Settlement Class, and in order to avoid the expense of hiring a third party." (Doc. 65 at 5).  Plaintiff's Counsel will send the Proposed Class the Proposed Notice "via U.S. Mail to the last known address, as updated by appropriate public records." (Doc. 65-1 at 7 ¶ 3.2.2).  Plaintiff's Counsel will also create and maintain a Settlement Website to "host important settlement documents, such as the Complaint, the Class Notice, the Settlement Agreement, and the Preliminary Approval Order[,]" and "procedural information regarding the status of the Court-approval process, such as an announcement regarding when the Final Approval Hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been

---

[1] Experian, Equifax, or Trans Union are the "Big Three" national CRAs that "accumulate and sell data concerning individuals' credit histories and other personal information" to reseller CRAs such as Advantage.  (Doc. 41 at ¶¶ 4–7).

1  reached, and when payments will likely be mailed." (*Id*. at 8 ¶ 3.2.3).

2  ## II.   Legal Standard

3      Rule 23[2] governs the requirements and procedures for class action settlements.

4  The Ninth Circuit has declared a strong judicial policy that favors settlement of class

5  actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Hyundai*

6  *and Kia Fuel Economy Litig*., 926 F.3d 539, 556 (9th Cir. 2019). Nevertheless, where, as

7  here, "parties reach a settlement agreement prior to class certification, courts must peruse

8  the proposed compromise to ratify both [1] the propriety of the certification and [2] the

9  fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see*

10  *also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011)

11  (holding when parties seek approval of a settlement negotiated prior to formal class

12  certification, "there is an even greater potential for a breach of fiduciary duty owed the

13  class during settlement").

14      When parties seek class certification only for the purposes of settlement, courts

15  "must pay 'undiluted, even heightened, attention' to class certification requirements"

16  because, unlike in a fully litigated class action suit, the court will not have future

17  opportunities "to adjust the class, informed by the proceedings as they unfold." *Amchem*

18  *Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *accord Hanlon v. Chrysler Corp.*, 150

19  F.3d 1011, 1019 (9th Cir. 1998). The parties cannot "agree to certify a class that clearly

20  leaves any one requirement unfulfilled," and, consequently, the court cannot blindly rely

21  on the fact that the parties have stipulated that a class exists for purposes of settlement.

22  *Berry v. Baca*, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005); *see also Amchem*, 521

23  U.S., at 622 (observing that nowhere does Rule 23 say that certification is proper simply

24  because the settlement appears fair). In conducting the second part of its inquiry,

25  "court[s] must carefully consider 'whether a proposed settlement is fundamentally fair,

26  adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather

27  than the individual component parts, that must be examined for overall fairness . . . .'"

28  ---

[2] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

*Staton*, 327 F.3d at 952 (*quoting Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).

Procedurally, the approval of a class action settlement takes place in two stages. In the first stage of the approval process, "the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class." *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (*quoting In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004)). Therefore, in this Order the Court will only "determine [ ] whether a proposed class action settlement deserves preliminary approval" and lay the groundwork for a future fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

At the fairness hearing, after notice is given to the Proposed Class, courts will entertain any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the Proposed Settlement Agreement. *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial"). Following the fairness hearing, courts will make a final determination as to whether the parties should be allowed to settle the class action under the terms agreed upon. *DIRECTV*, 221 F.R.D. at 525.

## III. Discussion

Plaintiff's Unopposed Motion asks this Court to (1) certify the Proposed Class for settlement purposes only; (2) preliminarily approve the Proposed Settlement; (3) approve the Proposed Notice to be distributed to the Proposed Class in accordance with the Notice Plan; (4) appoint Plaintiff as Class Representative; (5) appoint Plaintiff's Counsel as Class Counsel and approve them as the Settlement Administrator; and (6) set a date for the final fairness hearing. (Doc. 65 at 2). The Court will address each request in turn.

1

**A.      Preliminary Certification of the Settlement Class**

The Court first considers whether to the certify the Proposed Class.  A class action will only be certified if it meets the four prerequisites identified in Rule 23(a) and additionally fits within one of the three subdivisions of Rule 23(b).  Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978), the Court must conduct a rigorous inquiry before certifying a class.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *E. Tex. Motor Freight Sys. V. Rodriguez*, 431 U.S. 395, 403–05 (1977).

As noted above, despite the parties' agreement that a class exists for the purposes of settlement, this does not relieve the Court of its duty to conduct its own inquiry. *Mathein v. Pier 1 Imports (U.S.), Inc.*, 2017 WL 6344447, at *7 (E.D. Cal. Dec. 12, 2017).  Typically, when parties settle before the class is certified, courts are denied adversarial briefs on the class certification issue.  *Id.*  Therefore, although Advantage agrees that class treatment is appropriate for purposes of settlement only, the Court must nonetheless decide whether the issues in this case should be treated as class claims under Rule 23. *Id.*

**1.      Rule 23(a)**

Rule 23(a) restricts class actions to cases where:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are more commonly referred to respectively as numerosity, commonality, typicality, and adequacy of representation.  *Hanlon*, 150 F.3d at 1019.  The Court will address each requirement below.

### a.   Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw.*, *Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  While the numerosity requirement is not tied to any fixed numerical threshold, generally, a "class of 41 or more is usually sufficiently numerous." 5-23 Moore's Federal Practice—Civil § 23.22 (2016). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (courts are "inclined to find the numerosity requirement in the present case satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71").

Here, the parties agree there are approximately ninety-one (91) consumers who were the subject of consumer reports with false deceased notations from at least one of Experian, Equifax, or Trans Union.  (Doc. 65 at 8).  The parties also indicate that the identities of the Proposed Class Members have been ascertained.  (*Id.*)

Therefore, this action meets the numerosity requirement.

### b.   Commonality

Rule 23(a) also requires that "questions of law or fact [be] common to the class." Fed. R. Civ. P. 23(a)(2).  Because "[t]he Ninth Circuit construes commonality liberally," "it is not necessary that all questions of law and fact be common." *West*, 2006 WL 1652598, at *3 (citing *Hanlon*, 150 F.3d at 1019).  The commonality requirement is met "when the common questions it has raised are apt to drive the resolution of the litigation . . . ." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (internal quotation and citation omitted).

Plaintiff's Count I alleges Advantage willfully failed to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b).  Plaintiff

- 7 -

1    represents the Proposed Class raises common legal issues of FCRA liability and

2    willfulness.  (Doc. 65 at 9).  Plaintiff further maintains the Proposed Class raises common

3    factual questions because each Member experienced the same falsity that arose from the

4    same standardized practice—that is, Advantage's "decision to report individuals as

5    deceased, even when it has contrary information in its possession."  (*Id*.)  The Court

6    agrees that Plaintiff and the Proposed Class Members derive their claims from the same

7    set of circumstances.  Indeed, "several courts in this Circuit have regarded the question of

8    whether the defendant used reasonable procedures to assure maximum possible accuracy

9    as satisfying the commonality prerequisite."  *Kang v. Credit Bureau Connection, Inc.*,

10   2022 WL 658105, at *4 (E.D. Cal. Mar. 4, 2022) (citing *Patel v. Trans Union*, LLC, 308

11   F.R.D. 292, 304 (N.D. Cal. 2015); *Ramirez v. Trans Union*, LLC, 301 F.R.D. 408, 418

12   (N.D. Cal. 2014); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 384 (C.D. Cal. 2007)).

13          Therefore, this action meets the commonality requirement.

### c.    Typicality

15          Rule 23(a) further requires that the "claims or defenses of the representative

16   parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

17   Typicality requires that the named plaintiff have claims "reasonably coextensive with

18   those of absent class members," but the claims do not have to be "substantially identical."

19   *Hanlon*, 150 F.3d at 1020.  The test for typicality "is whether other members have the

20   same or similar injury, whether the action is based on conduct which is not unique to the

21   named plaintiffs, and whether other class members have been injured by the same course

22   of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal

23   quotation and citation omitted).  This ensures that "the named plaintiff's claim and the

24   class claims are so interrelated that the interests of the class members will be fairly and

25   adequately protected in their absence."  *Falcon*, 457 U.S. at 158 n.13.

26          Plaintiff and the Proposed Class experienced the same incorrect deceased notation

27   that arose from the same standardized practice allegedly carried out by Advantage.  In

28   other words, the action is based on a broader scheme of conduct that is not unique to the

Plaintiff.  *Hanon*, 976 F.2d at 508.  Plaintiff also argues his "proof regarding the reasonableness of [Advantage's] procedures, whether [Advantage's] acted willfully, and the proper amount of statutory and punitive damages" is the same proof that would advance the Proposed Class Members claims.  (Doc. 65 at 10).  This is a sufficient showing that Plaintiff's claims and injured interests are typical of the Proposed Class.

Therefore, this action meets the typicality requirement.

### d.    Adequacy of Representation

Last, Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To resolve the question of legal adequacy, the Court must answer two questions: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members and (2) has the named plaintiff and his counsel vigorously prosecuted the action on behalf of the class? *Hanlon*, 150 F.3d at 1020.  This adequacy inquiry considers a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).  "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)."  *Amchem*, 521 U.S. at 626 n.20.

The first prong requiring examination of potential conflicts of interest in settlement agreements "has long been an important prerequisite to class certification. That inquiry is especially critical when [ ] a class settlement is tendered along with a motion for class certification."  *Hanlon*, 150 F.3d at 1020.  Here, Plaintiff assures there are no conflicts with other Proposed Class Members because he has the same interest in receiving relief.  (Doc. 65 at 10).  Indeed, the definition of the Proposed Class avoids conflicts by excluding "[Advantage's] officers, directors, and employees, [the p]arties' counsel, any judge overseeing or considering the approval of the [Proposed] Settlement, together with members of their immediate family and any judicial staff."  (Doc. 65-1 at 8 ¶ 3.1).

The second prong of the adequacy inquiry examines the vigor with which Plaintiff and his Counsel have pursued the common claims.  "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation."  *Hanlon*, 150 F.3d at 1021.  Probing Plaintiff and his counsel's rationale for not pursuing further litigation, however, is inherently more complex.  "District courts must be skeptical of some settlement agreements put before them because they are presented with a 'bargain proffered for . . . approval without the benefit of an adversarial investigation.'"  *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 620).

As to vigor and competency, Plaintiff avers he has "remained in contact and up to date on this litigation through counsel[,]" "understand[s] what it means to be a class representative, and ha[s] and will put the interests of the class first in making all decisions related to the case."  (Doc. 51 at 2 ¶ 7).  Plaintiff's Counsel has been appointed as lead counsel in dozens of class action consumer protection cases including those brought under the FCRA.  (Doc. 53 at ¶¶ 10).  Before settlement, Plaintiff had amended his initial class action complaint to clarify the class definition and narrow his asserted claims.  (Doc. 65 at 3). The parties also commenced discovery before seeking settlement, including interrogatories, third party discovery of Advantage's data vendor, two depositions of Advantage's representatives, and data analysis by Plaintiff's retained expert.  (Docs. 65 at 3; 53-1; 53-2; 53-3; 53-4; 53-7).  The Court thus finds the parties' efforts to investigate before settlement are satisfactory.

Therefore, this action meets the adequacy of representation requirement.

### 2.     Rule 23(b)

In addition to satisfying all four requirements of Rule 23(a), a plaintiff must show the proposed class meets one of three threshold requirements under Rule 23(b).  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974).   Plaintiffs must show either: (1) prosecuting separate actions would create a risk of inconsistent or dispositive

1  adjudications; (2) the opposing party's actions have applied to the class generally such
2  that final relief respecting the whole class is appropriate; or (3) questions of law or fact
3  common to class members predominate over any questions affecting only individual
4  members, and a class action is superior to other available methods for fairly and
5  efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b).

6         Here, Plaintiff argues this case qualifies for certification under Rule 23(b)(3).
7  (Doc. 65 at 11–12).  A class action may be maintained under Rule 23(b)(3) if (1) "the
8  court finds that questions of law or fact common to class members predominate over any
9  questions affecting only individual members," and (2) "that a class action is superior to
10  other available methods for fairly and efficiently adjudicating the controversy."
11  Fed. R. Civ. P. 23(b)(3).

12                        a.      **Predominance**

13         Because Rule 23(a)(3) already considers commonality, the focus of the
14  Rule 23(b)(3) predominance inquiry is on the balance between individual and common
15  issues.  *Hanlon*, 150 F.3d at 1022; *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3)
16  predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant
17  adjudication by representation.").  Predominance requires that questions common to the
18  Proposed Class predominate over individualized inquiries.  Fed. R. Civ. P. 23(b)(3).  The
19  United States Supreme Court distinguishes an individual question, "where 'members of a
20  proposed class will need to present evidence that varies from member to member,'" from
21  a common question, "where 'the same evidence will suffice for each member to make a
22  prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"
23  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein,
24  Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).  The Supreme Court
25  further clarified that Rule 23(b)(3) requires a threshold "showing that *questions* common
26  to the class predominate, not that those questions will be answered, on the merits, in favor
27  of the class."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459
28  (2013).

Here, Plaintiff argues this case poses the following common questions: "(1) whether [Advantage's] reporting of contradictory information about whether a consumer was alive was a reasonable procedure to assure maximum accuracy; (2) whether [Advantage's] conduct was willful; and (3) the proper measure of statutory and punitive damages." (Doc. 65 at 11–12). The Court agrees that these overarching questions predominate over any possible individual questions among the Proposed Class.

The Rule 23(b)(3) predominance inquiry also considers questions of damages and requires plaintiffs to show their damages are: (1) capable of being measured on a class wide basis; and (2) traceable to the defendant's action that created the legal liability. *Just Film, Inc.*, 847 F.3d at 1120. A defendant who willfully violates the FCRA is liable to the consumer for "actual damages sustained by the consumer *or* [statutory] damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1) (emphasis added). The Proposed Settlement here provides for $1,000 equal payments to each of Proposed Class member, the maximum statutory range. (*See* Doc. 65-1 at 13 ¶ 4.3); 15 U.S.C. § 1681n(a)(1). Indeed, the Ninth Circuit has interpreted the disjunctive "or" in 15 U.S.C. § 1681n(a)(1) "to mean that the consumer may recover statutory damages without demonstrating actual harm." *Kang*, 2022 WL 658105, at *7 (citing *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718-19 (9th Cir. 2010)). This case accordingly does not present individualized damage issues that outweigh common issues.

Therefore, common questions of law and fact predominate in this matter.

**b.    Superiority**

To satisfy Rule 23(b)(3), Plaintiff must also prove class resolution of the case is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four "pertinent" factors to evaluate superiority: "[1] the class members' interests in individually controlling the prosecution or defense of separate actions; [2] the extent and nature of any litigation concerning the controversy already begun by or against class members; [3] the desirability or undesirability of concentrating the litigation of the claims in the particular

forum; and [4] the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)-(D).  "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  *Valentino v. Carter-Wallace*, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

The Court finds the four pertinent factors weigh in favor of certification.  There is no indication that any Proposed Class Member is engaged in prosecution of separate actions.  Furthermore, Plaintiff indicates his Counsel is unaware of any other suit raising the same issues based on the same standardized practice of carrying out false deceased notations.  (Doc. 65 at 12).  The Court agrees class litigation will be particularly efficient in this matter through use of Advantage's data.

Overall, the Court finds that class treatment of the claims appears to be warranted and will therefore preliminarily certify this matter as a class action.

## B.    Preliminary Evaluation of Fairness of Proposed Class Action Settlement

Having determined that class treatment appears to be warranted, the Court must now decide whether to preliminarily approve the Proposed Settlement Agreement.  Rule 23(e) requires courts to evaluate a proposed settlement for fundamental fairness, adequacy, and reasonableness before approving it. Fed. R. Civ. P. 23(e)(2).  Ultimately, a determination of the fairness, adequacy, and reasonableness of a class action settlement involves consideration of:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004) (citation omitted). But when "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight . . . factors alone" are insufficient. *In re Bluetooth*, 654 F.3d at 946.  In these cases, courts must show not only a comprehensive analysis of the above

factors, but also that the settlement did not result from collusion among the parties. *Id.* at 947. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *Hanlon*, 150 F.3d at 1026; *accord In re Gen. Motors*, 55 F.3d at 805 (courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified").

However, some of the *Churchill* factors cannot be fully assessed until a court conducts its fairness hearing. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Thus, at the preliminary approval stage, courts need only evaluate "whether the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious-deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (internal quotation and citation omitted). The Court is cognizant that "[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

At this juncture, the Court will review the parties' Proposed Settlement Agreement according to the four considerations listed above and conduct a cursory review of its terms in deciding whether to order the parties to send the proposal to Class Members and conduct the final fairness hearing. *Alberto*, 252 F.R.D. at 665. Plaintiff indeed confines his analysis of fairness and adequacy of the Proposed Settlement to these four considerations. Because it entails a provisional review, courts grant preliminary approval of a class action settlement where the proposed settlement does not disclose grounds to doubt its fairness and lacks "obvious deficiencies." *In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting Manual for Complex Litigation (Third) § 30.41 (1995)).

**1.     Settlement Process**

- 14 -

The Court must first look at the means and negotiations by which the parties settled the action. *Horton*, 266 F.R.D. at 363. Courts bear the obligation to evaluate the scope and effectiveness of the investigation plaintiff's counsel conducted prior to reaching an agreement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007) ("Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement."); *see also Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a courtdesignated [sic] class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).").

Here, the parties "began to engage in arms' length negotiations through counsel to explore resolution, including the exchange of numerous letters, emails and telephone calls." (Doc. 65 at 3). Plaintiff does not offer any further insight into the parties' negotiation process. The negotiations took place after Plaintiff filed his original Motion to Certify and after the parties had commenced discovery, which included interrogatives, third party discovery of Advantage's data vendor, two depositions of Advantage's representatives, and data analysis by Plaintiff's retained expert. (Docs. 65 at 3; 53-1; 53-2; 53-3; 53-4; 53-7). For example, Plaintiff had issued a subpoena to third party to "quer[y] its systems for credit reports issued by [Advantage] during the class period which contained at least one deceased indicator and one credit score. [The third party] produced the resulting data to Plaintiff, without consumers' identifying information [and] produced the same data to [Advantage], with consumers' identifying information." (Doc. 53 at 2 ¶ 7).

As there is no evidence to suggest that the settlement was negotiated in haste or collusion, the Court is preliminarily satisfied that the Settlement Agreement was the

1   product of serious, informed negotiations.  *See Hanlon*, 150 F.3d at 1027 (affirming

2   approval of settlement when there was "no evidence to suggest that the settlement was

3   negotiated in haste or in the absence of information illuminating the value of plaintiffs'

4   claims").  However, at the fairness hearing, the parties should be prepared to present

5   evidence regarding the adequacy of the settlement negotiation process.

6   / / /

7                    **2.        Obvious Deficiencies**

8         Next, the Court will review the terms of the Proposed Settlement Agreement for

9   obvious deficiencies.  The Proposed Settlement provides that Advantage would create a

10  Settlement Fund of $96,000.  (Doc. 65-1 at 5 ¶¶ 1.12–13).  The Settlement Fund will be

11  used to pay a $5,000 Service Award for Plaintiff and $1,000 equal payments for each

12  Proposed Class Member.  (*Id*. at 13 ¶ 4.3).  The parties intend any unclaimed, remaining

13  fund be donated to Public Justice as a *cy pres* recipient.  (*Id*. at 14 ¶ 4.6).  Advantage

14  would also create a separate Settlement Attorneys' Fees and Costs Fund of $99,000.

15  (*Id*. at 5 ¶ 1.5).  Plaintiff will petition the Court to approve the distribution of fees in an

16  amount not to exceed $99,000.  (*Id.*)

17        Obvious deficiencies in a settlement agreement include "any subtle signs that class

18  counsel have allowed pursuit of their own self-interests to infect the negotiations."

19  *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) (quoting *Roes, 1-2 v.*

20  *SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019)).  The Ninth Circuit has

21  identified three such "subtle signs," which it refers to as the *Bluetooth* factors: "(1) when

22  counsel receives a disproportionate distribution of the settlement; (2) when the parties

23  negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge

24  a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker

25  or reverter clause that returns unawarded fees to the defendant, rather than the class."

26  *McKinney-Drobnis*, 16 F.4th at 607–08 (citation omitted); *In re Bluetooth*, 654 F.3d at

27  947 (internal quotation and citation omitted).  District courts must apply the

28  *Bluetooth* factors in examining pre-certification settlements "to smoke out potential

collusion." *Briseno v. Henderson*, 998 F.3d 114, 1023 (9th Cir. 2021).

There are no signs of collusion in the Proposed Settlement under the *Bluetooth* factors. There is no danger of Plaintiff's Counsel receiving a disproportionate distribution of the Proposed Settlement because Advantage agrees to create a separate Settlement Attorneys' Fees and Costs Fund. Moreover, the parties have not negotiated a clear-sailing arrangement for fees. Although the parties agree that fees will not exceed $99,000, Plaintiff's petition for fees is subject to Court approval and nothing in the Proposed Settlement prevents Advantage from opposing the amount which Plaintiff petitions. To be sure, the parties agree that "[s]hould the Court decline to approve any requested payment of attorneys' fees, or reduce any such requested payment, the Settlement shall still be effective." (Doc. 65-1 at 13 ¶ 4.4). Last, there is no reverter clause as all unawarded funds are to be donated to Public Justice as a *cy pres* recipient. The Court finds this distribution proper as all Proposed Class Members stand to receive the maximum statutory damages permitted under the FCRA. *See supra* Section III.A(2)(a).

Therefore, the Court finds there are no obvious deficiencies in the Proposed Settlement Agreement.

### 3. Preferential Treatment for Plaintiff

The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel has allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. The Court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Id.* at 975. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive

1   payments, the proportion of the payments relative to the settlement amount, and the size

2   of each payment." *Id.*

3        Here, each Proposed Class Member stands to recover $1,000 while Plaintiff stands

4   to receive a Service Award of $5,000.  Plaintiff's Service award amounts to just 0.05% of

5   the Settlement Fund.  This modest Service award is reasonable under Ninth Circuit Case

6   law.  *See e.g.*, *In re Online DVD-Rental Antitrust Litig.* 779 F.3d 934 (9th Cir. 2015)

7   (approving incentive payments totaling up to 0.17% of the settlement fund).  The Court

8   therefore finds that the Proposed Settlement Agreement does not improperly grant

9   preferential treatment to Plaintiff or segments of the class.

10              **4.**      **Settlement Fund Within Range of Possible Approval**

11        To determine whether a settlement "falls within the range of possible approval,"

12   courts focus on "substantive fairness and adequacy" and "consider plaintiffs' expected

13   recovery balanced against the value of the settlement offer."  *Tableware*, 484 F. Supp. 2d

14   at 1080.  The FCRA provides for statutory damages up to $1,000 for each willful

15   violation. 15 U.S.C. § 1681n(a)(1).  Thus, as Plaintiff points out, the recovery of $1,000

16   per Proposed Class Member "is 100% of the likely award if this case had proceeded all

17   the way through a final judgment in Plaintiff's favor, and is an excellent recovery for the

18   Settlement Class."  (Doc. 65 at 15).  Plaintiff does not offer any further insight as to how

19   the parties agreed upon the statutory maximum.

20        The Court preliminarily approves the amount of the Settlement Fund.  However, at

21   the fairness hearing, the parties should be prepared to present evidence regarding how

22   they decided on the amount of the Proposed Class's recovery.

23        In sum, the Court will preliminarily approve the Proposed Settlement Agreement

24   because it "appears to be the product of serious, informed, non-collusive negotiations, has

25   no obvious-deficiency, does not improperly grant preferential treatment to class

26   representatives or segments of the class and falls within the range of possible approval."

27   *Horton*, 266 F.R.D. at 363 (internal quotation and citation omitted).

28           **C.**      **Proposed Class Notice and Administration**

- 18 -

The Court finally turns to the Proposed Notice the parties intend to distribute to the Proposed Class.   Rule 23(c)(2)(B) governs the requirements for notices in Rule 23(b)(3) class actions:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language[]
>
> (i)      the nature of the action;
>
> (ii)     the definition of the class certified;
>
> (iii)    the class claims, issues, or defenses;
>
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)     that the court will exclude from the class any member who requests exclusion;
>
> (vi)    the time and manner for requesting exclusion; and
>
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).   The notice may be distributed by United States mail, electronic means, or other appropriate means.   *Id*.   In addition, due process requires the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Proposed Settlement details a Notice Plan and includes a Proposed Notice. The Notice Plan provides for notice by United States Mail and identifies a procedure for obtaining updated addresses from Advantage.   (Doc. 65-1 at 7 ¶ 3.2.2).   The Proposed Notice is in the form of easily understandable questions and answers concerning the Proposed Settlement Agreement and the litigation.   (*Id*. at 23–29).   It informs Proposed Class Members that they "do not need to do anything to receive

payment." (*Id.* at 25).  The Proposed Notice meets the requirements of Rule 23(c)(2)(B) because it describes the nature of the action; defines the Proposed Class; states the issues; tells Proposed Class Members how to appear at the fairness hearing; and explains the exclusion process, the deadline for exclusion, and the otherwise binding effect of the judgment.  (*Id.* at 25–29).  It also meets due process requirements because it explains to the Proposed Class their rights to opt out of or object to the Proposed Settlement, and the deadlines by which to exercise those rights.  (*Id.* at 27–29).  The Notice Plan is designed to reach as many people as practicable and further directs the Proposed Class Members to the Settlement Website for more detailed information.  (*Id.* at 29).

However, the Court is concerned with the parties' handling of the Proposed Class Members' Social Security numbers.  The Notice Plan requires Advantage to provide a "Class list" to Plaintiff's Counsel that includes the Proposed Class Members' full names, Social Security numbers, and last known mailing addresses.  (Doc. 65-1 at 8 ¶ 3.2.1). Similarly, the Notice Plan requires those Proposed Class Members who wish to opt out of the Proposed Settlement send to Plaintiff's Counsel a written statement that includes *inter alia* the last four digits of their Social Security number. (Doc. 65 at 5–6 citing Doc. 65-1  ¶ 3.2.4.)  But Plaintiff does not explain why a Social Security number is necessary to communicate with clients and the Court "sees no reason to demand such unnecessarily intrusive information to be produced."  *Russell v. Swick Mining Servs. USA Inc.*, 2017 WL 1365081 (D. Ariz. Apr. 14, 2017) (collecting cases); *see also Delara v. Diamond Resorts Int'l Mktg., Inc.*, 2020 WL 2085957, at *4 (D. Nev. Apr. 30, 2020) ("If counsel later needs that information, it can request it of the opt-in plaintiffs and justify the request to them.").  The Proposed Settlement Agreement and Proposed Notice should be revised accordingly: Advantage shall not provide Plaintiff's Counsel with the Proposed Class Members' Social Security numbers; and the Proposed Class Members shall not be required to provide the last four digits of their security number in order to opt out.

Contingent on the revisions identified above, the Court approves the remainder of the parties' Notice Plan (Doc. 65-1 at 7 ¶ 3.2) and Proposed Notice (*Id.* at 23–29), and

believes direct mail, with all reasonable efforts made to obtain updated addresses, is the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## III.   Conclusion

The Court preliminarily finds that the Proposed Class meets the requisite certification standards and grants conditional certification of the Proposed Class for settlement purposes.   The Court preliminarily approves the Proposed Settlement Agreement as sufficiently fair, reasonable, and adequate to allow the dissemination of notice of the proposed settlement to the members of the Proposed Class.  The Notice Plan and Proposed Notice are approved so long as the parties carry out the following revisions: Advantage shall not provide Plaintiff's Counsel with the Proposed Class Members' Social Security numbers; and the Proposed Class Members shall not be required to provide the last four digits of their security number in order to opt out of the Proposed Settlement.  Plaintiff shall be appointed as Class Representative.  Plaintiff's Counsel shall be appointed as Class Counsel and approved as the Settlement Administrator. Furthermore, at the fairness hearing, the parties should be prepared to present evidence regarding (1) the adequacy of the settlement negotiation process; and (2) their rationale for an award of $1,000 in FCRA statutory damages.

Accordingly.

**IT IS ORDERED** as follows:

**I.**   The Lawsuit is preliminarily certified, for settlement purposes only, as a class action on behalf of the following class of plaintiffs (hereinafter referred to as the "Class Members") with respect to the claims asserted in the Lawsuit:

> all natural persons who were the subject: (1) of a consumer report furnished by Defendant Advantage Plus Credit Reporting Incorporated to a third party from December 8, 2019 through November 2021; (2) where the consumer report contained a notation that the consumer was deceased from at least one of Experian, Equifax, or Trans Union; and (3) where at least one other of Experian, Equifax, or Trans Union did not contain a deceased notation.

The Court expressly reserves the right to determine, should the occasion arise,

whether the above-captioned Lawsuit may continue to be certified as a class action for purposes other than settlement, and Defendant Advantage Plus Credit Reporting Incorporated retains all rights to assert that the Lawsuit may not be certified as a class action except for purposes of this settlement.

**II.**     The Court appoints as Class Representative: Plaintiff Cecil C. Garrett.

**III.**    The Court appoints as Class Counsel: E. Michelle Drake and Joseph C. Hashmall, Berger Montague PC, 1229 Tyler St. NE, Ste. 205, Minneapolis, MN 55413.

**IV.**    The Court appoints as Settlement Administrators: E. Michelle Drake and Joseph C. Hashmall, Berger Montague PC, 1229 Tyler St. NE, Ste. 205, Minneapolis, MN 55413.  The Settlement Administrator will be responsible for mailing the approved class action notice and settlement checks to the Class Members.

**V.**     The Court preliminarily finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Federal Rule of Civil Procedure 23, for purposes of settlement only, namely:

      **A.**     The Class Members are so numerous that joinder of all of them in the Lawsuit is impracticable;

      **B.**     There are questions of law and fact common to the Class Members, which predominate over any individual questions;

      **C.**     The claims of Plaintiff are typical of the claims of the Class Members;

      **D.**     Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and

      **E.**     Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

**VI.**    The Court preliminarily approves the Settlement Agreement & Release

(Doc. 65-1) as sufficiently fair, reasonable, and adequate to allow the dissemination of notice of the proposed settlement to the members of the Settlement Class.   This determination permitting notice to the Class Members is not a final finding, but a determination that there is sufficient cause to submit the Settlement Agreement to the Class Members and to hold a Final Approval Hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement Agreement.

**VII.**   The Court approves the Class Action Settlement Notice, not materially different from Exhibit A (Doc. 65-1 at 22–29) attached to the Settlement Agreement & Release, provided it be revised so not to require the Class Members to state the last four digits of their security number in order to opt out of the Proposed Settlement.

The Class Action Settlement Notice and method for notifying the Class Members of the settlement and its terms and conditions meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons entitled to the notice.   The Court finds that the Class Action Settlement Notice is clearly designed to advise the Class Members of their rights.

In accordance with the Settlement Agreement & Release, Defendant Advantage Plus Credit Reporting Incorporated shall provide the Class List to Class Counsel **within fourteen (14) days of the issuance of this Order.**   The Class List shall include the Class Members' full names and last known mailing addresses.

In accordance with the proposed Settlement Agreement & Release, the Settlement Administrators shall mail via United States mail, postage paid, the Class Action Settlement Notice **within fourteen (14) days of receipt of the Class List**.

**VIII.**   Any Class Member who desires to be excluded from the class must comply with the terms set forth in the Class Action Settlement Notice and submit an appropriate and timely request for exclusion postmarked no later than **no later than sixty (60) days from the initial dissemination of notice**.   Any Class Member who submits a valid and timely request for exclusion will not be bound by the terms of the proposed Settlement

Agreement & Release.

**IX.** Any Class Member who does not timely request exclusion as set forth in the Class Action Settlement Notice and who intends to object to the fairness of the Settlement Agreement & Release must comply with the terms set forth in the Class Action Settlement Notice and file a written objection with the Court **no later than sixty (60) days from the initial dissemination of notice.** Any such Class Member must provide a copy of the written objection, within the same period, to Class Counsel: E. Michelle Drake and Joseph C. Hashmall, Berger Montague PC, 1229 Tyler St. NE, Ste. 205, Minneapolis, MN 55413.

Any Class Member who has timely filed an objection must appear at the Final Approval Hearing, in person or by counsel, and be heard to the extent allowed by the Court, applying applicable law, in opposition to the fairness, reasonableness and adequacy of the Settlement, and on the application for an award of attorneys' fees and costs. The right to object to the proposed Settlement Agreement & Release must be exercised individually by an individual Class Member, not as a member of a group or subclass and, except in the case of a deceased, minor, or incapacitated Class Member, not by the act of another person acting or purporting to act in a representative capacity.

**X.** The Court will conduct an in-person Final Approval Hearing **on January 17, 2024, at 10:00 AM** at the United States District Court for the District of Arizona, Sandra Day O'Connor U.S. Courthouse, Courtroom 605, 401 West Washington Street, Phoenix, AZ 85003-2158, to review and rule upon the following issues:

**A.** Whether this action satisfies the applicable prerequisites for class action treatment for settlement purposes under Fed. R. Civ. P. 23;

**B.** Whether the proposed Settlement Agreement & Release is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court;

**C.** Whether a Final Order and Judgment, as provided under the proposed Settlement Agreement & Release, should be entered, dismissing the Lawsuit

with prejudice and releasing the Released Claims against the Released Parties; and

**D**.    To discuss and review other issues as the Court deems appropriate. Such information shall be provided to Class Members via the Class Action Settlement Notice.

**XI.**    The Court reserves the right to adjourn or to continue the Final Approval Hearing, or any further adjournment or continuance thereof, without further notice other than announcement at the Final Approval Hearing or at any adjournment or continuance thereof; and to approve the settlement with modifications, if any, consented to by Class Counsel and Defendant Advantage Plus Credit Reporting Incorporated without further notice.

**IT IS FURTHER ORDERED** that Plaintiff Cecil C. Garrett's "Unopposed Motion for Preliminary Approval of Class Action Settlement" (Doc. 65)  is **GRANTED** as stated herein.

Dated this 5th day of September, 2023.

Honorable Diane J. Humetewa
United States District Judge