Mark L. Heaney, SBN #022492
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, MN 55305
T. 952.933.9655
E-mail: mark@heaneylaw.com

E. Michelle Drake*
Joseph C. Hashmall*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. 612.594.5999
F. 612.584.4470
emdrake@bm.net
jhashmall@bm.net
*pro hac vice

Attorneys for Plaintiff
CECIL C. GARRETT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cecil C. Garrett, individually and as a representative of the Classes,<br><br>Plaintiff,<br><br>vs.<br><br>Advantage Plus Credit Reporting, Inc.,<br><br>Defendant. | CASE NO. 2:21-cv-2082-PHX-DJH<br><br>**PLAINTIFF'S UNOPPOSED MOTION & MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

**MOTION**

Plaintiff Cecil C. Garrett ("Plaintiff"), individually and on behalf of the Settlement Class, respectfully moves the Court for final approval of the settlement with Defendant Advantage Plus Credit Reporting, Inc. ("Defendant") and to order the distribution of the settlement fund in accordance with the Settlement Agreement. Defendant does not oppose the relief sought in this Motion.

**MEMORANDUM**

On August 31, 2023, the Court granted preliminary approval of the proposed settlement of this action. (ECF No. 69.) The settlement provides meaningful monetary relief for the Settlement Class Members, *above* the top of the statutory range per Class Member for Fair Credit Reporting Act ("FCRA") damages and without requiring any claims process. This is an exceptional result for the Settlement Class.

Accordingly, Plaintiff, individually and on behalf of the Settlement Class, respectfully requests the Court enter an order granting final approval to the settlement, which fully resolves this class action brought under the FCRA, 15 U.S.C. § 1681e(b).

**I.    RELEVANT BACKGROUND**

**A.    Summary of Claims and Litigation History**

The substance and history of this action is recounted in detail in Plaintiff's preliminary approval motion and is summarized here. (*See* ECF No. 65.)

On December 8, 2021, Plaintiff filed his initial class action complaint against Defendant, alleging that Defendant had negligently and willfully violated the FCRA, 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in its consumer reporting. (ECF No. 1.) Plaintiff alleged that Defendant inaccurately included in his and class members' consumer reports a notation that they were "deceased" when in fact they are alive. (*Id.*) Defendant did this in spite of receiving information the consumers were in fact alive from at least one of the three consumer reporting agencies for whom Defendant acts as a reseller of data. (*Id.*) On July 12, 2022, Plaintiff filed the operative First Amended Complaint ("FAC"), clarifying the class

1

definition and narrowing the asserted claims. (ECF No. 41.) The FAC alleges that Defendant violated 15 U.S.C. § 1681e(b) on behalf of a class of consumers who had a consumer report furnished by Defendant to a third party during the class period that contained a notation that the consumer was deceased from at least one credit bureau and where one or more other notations from other credit bureaus did not also contain a deceased notation, and where at the time the report was issued, the consumer was not deceased. (*Id.*)

Defendant disputes Plaintiff's allegations. Defendant answered the initial complaint on January 31, 2022 (ECF No. 15) and the FAC on July 25, 2022 (ECF No. 42). In March 2022, the Parties commenced discovery. Discovery was thorough, including third party discovery of Defendant's data vendor, two depositions of Defendant's representatives, and data analysis by Plaintiff's retained expert. On November 11, 2022, Plaintiff filed his Motion for Class Certification. (ECF No. 50.)

Following the filing of the Motion for Class Certification, the Parties began to engage in arms' length negotiations through counsel to explore resolution, including the exchange of numerous letters, emails and telephone calls. On December 8, 2022, the Parties agreed on settlement terms in principle on a classwide basis and notified the Court of the same. (ECF No. 63.) The Parties then worked to formalize the resolution in the Settlement Agreement, which the Court granted preliminary approval of on August 31, 2023. (ECF No. 69.)

### B. Key Settlement Terms

The settlement resolves, on a classwide basis, Plaintiff's claim that Defendant failed to maintain reasonable procedures to ensure maximum possible accuracy related to its reporting that consumers were deceased when they were alive.

The Settlement Class is defined as:

> all natural persons who were the subject: (1) of a consumer report furnished by Defendant to a third party from December 8, 2019 through November 2021; (2) where the consumer report contained a notation that the consumer was deceased from at least one of Experian, Equifax, or Trans Union; and

2

(3) where at least one other of Experian, Equifax, or Trans Union did not contain a deceased notation.

(Settlement Agreement ("SA") ¶ 1.21.)

The Class List contained 67 unique consumers. (Declaration of Joseph C. Hashmall ("Hashmall Decl.") ¶ 3.) Should the Court grant final approval, Defendant will pay $96,000 as a common fund for the Settlement Class. (SA ¶ 1.12.) Should the Court approve the requested Class Representative award of $5,000, then following its deduction from the fund, the Settlement Class Members will each receive equal payments of $1,358, automatically. Should any payment checks remain uncashed after the check negotiation period, the balance will be donated to Public Justice as a *cy pres* recipient. (*Id.* ¶ 4.6.) Public Justice is a non-profit focused on advocating for consumers' rights, providing various assistance and education programs. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) ("[C]y pres distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members.").

Class Counsel also requests the Court approve a payment by Defendant separate from the common fund as attorneys' fees, and reimbursement for out-of-pocket expenses, including those of settlement administration, in an amount not to exceed $99,000. (ECF No. 71.)

In exchange for their monetary benefits, Settlement Class Members will release claims that they have under 15 U.S.C. § 1681e(b) of the FCRA, and state statutory or common law analogs, for statutory, actual, and punitive damages, relating to Defendant's inclusion of a deceased notation in a consumer report on Settlement Class Members provided to a third party. (SA ¶ 4.2.)

### C.   Class Notice and Reaction

On September 14, 2023, Defendant provided Class Counsel with the Class List, containing Class Members' full names and last known addresses. (Hashmall Decl. ¶ 3.) The Class List ultimately contained 67 unique records, as the initial estimated class size

1   was determined to have contained instances of multiple reports for the same consumers.[1]
2   (*Id.*)  Class Counsel reviewed each of the Class Members' last known addresses against
3   public records to ensure contact information was accurate and up to date.  (*Id.* ¶ 4.)  On
4   September 28, 2023, Class Counsel caused the Notice packet, containing the approved
5   mail notice and a blank W-9 form, to be mailed via U.S. mail to each of the 67 Settlement
6   lass Members.  (*Id.* ¶ 5.)  On September 22, 2023, Class Counsel caused the Settlement
7   Website to go live, where important dates, FAQs, links to the Complaint, Settlement
8   Agreement, Answer, and Preliminary Approval Order, were all posted.  (*Id.* ¶¶ 8, 9.)
9   Further, Class Counsel set up a dedicated voicemail line and email inbox for settlement
10  inquiries.  The number and email address were included in the Class Notice.  (*Id.* ¶ 10.)
11  Additionally, for forty-five days following Notice mailing, if Notices were returned as
12  undeliverable, Class Counsel reviewed public records to locate alternate addresses and
13  remailed.  (*Id.* ¶ 6.)  Only one Notice was unable to re-mailed as no alternate address could
14  be located for the Class Member.  (*Id.* ¶ 7.)

15       On November 13, 2023, Plaintiff and Class Counsel filed their Motion for
16  Attorneys' Fees, Costs, and Class Representative Service Award (ECF No. 71), which
17  Class Counsel posted to the Settlement Website within twenty-four hours of its filing for
18  Class Members to review.  (Hashmall Decl. ¶ 9.)

19       The Opt-Out and Objections Deadline passed on November 27, 2023.  No opt-outs
20  or objections were received by Class Counsel.  (*Id.* ¶ 11.)  Additionally, Settlement Class
21  Members were sent a blank W-9 to use if they wanted to have withholdings applied to

---

[1] These duplicate entries were not discovered prior to settlement by Plaintiff's counsel or Plaintiff's expert because, in negotiations with opposing counsel and with counsel for Defendant's contractor, the Parties agreed to a structure in which only de-identified data would be produced to Plaintiff, with full data produced to Defendant.  (*See* ECF No. 53-7 (listing data fields to be produced to Plaintiff, and data fields to be produced to Defendant).)  With only the de-identified data, it was impossible for Plaintiff or his expert to identify duplicate entries.  Defendant did not identify these duplicate entries prior to negotiating the gross settlement amount.

4

their settlement payment. One such form was received by Counsel, and that Settlement Class Member's payment will be adjusted accordingly. (*Id.* ¶ 12.)

## II. ARGUMENT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Courts may approve proposed class action settlements if they are found to be "fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1991). The court begins its analysis with an "initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11:41 (4th ed. 2006); *accord*, *Dickerson v. Cable Commc'ns, Inc.*, No. 12-cv-12, 2013 WL 6178460, at *2 (D. Or. Nov. 25, 2013) ("Courts within the Ninth Circuit 'put a good deal of stock in the product of an arms[]length, non-collusive, negotiated resolution.'") (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

In reaching its determination, the court must consider a number of factors, including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004). Proposed settlements must additionally meet the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(A)–(D). Those factors are:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23.[2]

For the reasons set forth below, all of the relevant factors weigh in favor of granting final approval to the Parties' settlement, and following the final hearing, the Court should enter the Final Approval Order and approve the distribution of the settlement fund.

### A.    The Strength of Plaintiff's Case and the Litigation Risks Weigh in Favor of Settlement

While Plaintiff strongly believed in the merits of his case, there existed substantial risks in litigation that could have resulted in no recovery for Plaintiff and the Settlement Class. The Court would have needed to grant Plaintiff's pending motion for class certification, and then Plaintiff would have to survive summary judgment motion practice, and ultimately, prevail at trial. Each of these stages, of course, poses risk to Plaintiff's likelihood of success.

In particular, Plaintiff faced risk on the issue of willfulness. Unlike many consumer protection statutes, the FCRA is not a strict liability statute. Under the FCRA, a plaintiff can recover only where the defendant has acted negligently or willfully. Where the defendant's violation was at most negligent, recovery is limited to actual damages. *See* 15 U.S.C. §§ 1681n(a)(1); 1681o(a)(1). Therefore, in order to obtain a certain monetary recovery for all members of the class, Plaintiff would have had to prove not

---

[2] Courts have noted that "factors were not designed to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Sanft v. Sims Grp. USA Corp.*, No. 19-CV-08154-JST, 2023 WL 6851992, at *3 (N.D. Cal. Oct. 16, 2023) (quotation omitted). This brief will therefore address the Ninth Circuit factors first, and then briefly address the factors in the Rule, to the extent to which they were not already covered.

only that Defendant violated the FCRA, but that it did so willfully. Throughout this litigation, Defendant has vigorously contested that it willfully (or even negligently, for that matter) violated the FCRA. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995) ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991); *Lenox v. Equifax Info. Servs. LLC*, 2007 WL 1406914, *6 (D. Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); *Centuouri v. Experian Info. Solutions, Inc.*, 431 F. Supp. 2d 1002, 1007 (D. Ariz. 2006) (declining to enter summary judgment on the issue of willfulness in a case involving the reasonableness of consumer protection procedures).

Nor was willfulness here just the generic risk presented in most FCRA litigation. In cases brought against consumer reporting agencies like Defendant, who merge and resell information from other consumer reporting agencies ("resellers," in the statutory language), defendants often argue that there is no willful violation in relying on data from other consumer reporting agencies, who, they argue, must have been relying on their own reasonable procedures before reporting it. Plaintiff strongly disagrees with this argument, but recognizes that, in litigation, it posed major risk to recovery for the Class.

**B.     The Relief Provided is Significant and Weighs Strongly in Favor of Approval**

The settlement should be approved as it offers Settlement Class Members automatic, certain monetary relief that is *above* the maximum of the statutory range under the FCRA, which is exceptional in cases such as this one. Plaintiff sought statutory damages under the FCRA, which provides for damages of between $100 and $1,000 for each willful violation. 15 U.S.C. § 1681n(a)(1). Due to the difficulties inherent in establishing that violations were willful, it is common for FCRA class actions to settle for less than $100 per class member. *See*, *e.g.*, *In re Toys R Us-Delaware, Inc.–Fair &*

*Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-4 (C.D. Cal. 2014) ("A $5 or $30 award, therefore, represents 5% to 30% of the recovery that might have been obtained. This is not a *de minimis* amount. Given the likelihood that plaintiffs would have been unable to prove actual damages and the risk that they would have been unable to prove willfulness and recover any damages at all, the court finds that the amount of the settlement weighs in favor of approval."). The estimated net recovery here of approximately $1,358 per Settlement Class Member, which is over the top of the range of statutory recovery, strongly supports the fairness of the settlement.

The recovery that each Settlement Class Member is to receive is higher than other approved settlements challenging alleged inaccurate reporting under the FCRA. *See*, *e.g.*, *Pang v. Credit Plus*, No. 1:21-cv-00122, ECF No. 61 (D. Md. 2021) (final approval of settlement regarding deceased reporting where class members needed to file claim to recover; recovering class members received roughly $430); *Steinberg v. CoreLogic Credco, LLC*, No. 3:22-cv-498, ECF No. 46 at 15, ECF No. 49 (S.D. Cal 2023); (preliminary approval of settlement regarding deceased reporting where claiming class members are expected to receive roughly $600); *McAfee v. CIC Mortgage Credit, Inc.*, No. 3:22-cv-772 ECF No. 40 at 3, ECF No. 44 (E.D. Va. 2023) (preliminary approval of settlement regarding deceased reporting where claiming class members are expected to receive roughly $525). It is also higher than other FCRA settlements involving reports that were inaccurate in other ways. *See Roe v. IntelliCorp Records, Inc.*, No. 12-2288, ECF No. 139 (N.D. Ohio June 5, 2014) (final approval of settlement of alleged inaccurate reporting, and other FCRA claims, providing for $50-$270 net per class member); *Ryals v. HireRight Sols. Inc.*, No. 09-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) (final approval of settlement involving §1681e(b) claims, providing $15-$200 *gross* per class member recovery); *Ori v. Fifth Third Bank, Fiserv, Inc.*, No. 08-432, ECF No. 217 (E.D. Wis. Jan. 10, 2012) (final approval of settlement of alleged inaccurate mortgage loan reporting, claims-made, each claimant receiving approximately $55); *Speers v. Pre-Employ.com, Inc.*, No. 13-1849, ECF No. 83 (D. Or. Feb. 10, 2016) (final approval of settlement of

failure to maintain strict procedures when reporting adverse public record information, resulting in approximately $153 net per class member); *Villaflor v. Equifax Info. Servc. LLC*, No. 09-329, ECF No. 177 (N.D. Cal. May 3, 2011) (final approval of settlement of §1681e(b) claims, providing credit monitoring for class members with a retail value of $155).

In the preliminary approval order, the Court noted that "at the fairness hearing, the parties should be prepared to present evidence regarding how they decided on the amount of the Proposed Class's recovery." (ECF No. 69 at 18.) Because this case deals with statutory damages, determining the amount of recovery is simpler than it was in *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 124 (D. Ariz. 2022), a RICO case where preliminary approval was denied for opaque accounting of the class's recovery as compared to their damages. Here, without waiving the privilege for settlement deliberations and communications, Plaintiff notes that the settlement amount for the Class is $96,000, the initial estimate for size of the Class was 96 individuals, and the maximum statutory damages available under the FCRA is $1,000.[3] Plaintiff was also informed by the settlement of other closely analogous FCRA cases – cases against reseller consumer reporting agencies regarding erroneous deceased reporting, and was pleased to reach a settlement here that exceeds those amounts on a per class member basis. *See Pang*, No. 1:21-cv-00122, ECF No. 61 (class members filing claims received roughly $430); *Steinberg*, No. 3:22-cv-498, ECF No. 46 at 15; ECF No. 49 (preliminary approval of settlement where claiming class members are expected to receive roughly $600); *McAfee*, No. 3:22-cv-772 ECF No. 40 at 3, ECF No. 44 (preliminary approval of settlement where

---

[3] Also available under the FCRA are punitive damages, actual damages, and attorneys' fees. 15 U.S.C. § 1681n. The settlement here does include attorneys' fees, to be paid separate from the common fund. It was the view of Counsel that based upon the facts of this particular case, actual damages would have been difficult to recover on a class basis – class members who wanted to recover their actual damages could have opted out and pursued their own actions. Further, Counsel also believes that, based upon the conduct at issue of this Defendant in this case, it is very unlikely that the Class could have recovered punitive damages.

claiming class members are expected to receive roughly $525). Plaintiff believes that this result speaks for itself and is an excellent recovery for the Class.

### C. The Stage of the Proceedings and Amount of Discovery Completed Supports Approval

This action had been vigorously investigated, litigated, and negotiated, at the time of settlement. Prior to settlement, Plaintiff and Class Counsel had researched and drafted the Complaint and First Amended Complaint, propounded and responded to written discovery, conducted third party discovery, prepared for and took two depositions of Defendant, retained an expert, and fully briefed Plaintiff's Motion for Class Certification. Further, Counsel obtained and reviewed a significant volume of documents and data to understand the practices at issue in this litigation, the appropriate definition of the Class, and the strengths and weaknesses of the case, both on the merits and at class certification. Consequently, the Parties had a clear understanding of the claims and defenses in this action and were able to appropriately evaluate their positions prior to settlement. This further weighs in favor of final approval. *See In re Immune Resp. Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (where counsel had conducted "significant informal discovery and investigation on the matters alleged," this supported a finding that the parties had a "clear view of the strengths and weaknesses," and favored final approval); *Saliba v. KS Statebank Corp.*, No. 20-503, 2021 WL 4775105, *4 (D. Ariz. Oct. 13, 2021) (where plaintiff's motion for class certification was briefed and pending at the time of settlement, and depositions had been taken, "the Parties were thoroughly informed of the claims and the risks associated with them before reaching a settlement. This factor weighs in favor of settlement approval.").

### D. The Experience and Views of Counsel Support the Settlement

The views of experienced counsel are entitled to considerable weight when deciding to approve a settlement. *Saliba*, 2021 WL 4775105, *4 ("The opinion of experienced counsel supporting the settlement is entitled to considerable weight."). Class Counsel here are experienced and skilled in consumer class actions, and FCRA actions in

10
MOT. FOR FINAL APPROVAL, No. 2:21cv2082-DJH

particular. (ECF Nos. 53-5, 53-6.) Class Counsel's expertise brought this litigation to the resolution presented here, and their sound support of the settlement weighs in its favor. *See In re Immune Resp. Sec. Litig.*, 497 F. Supp. 2d at 1174 (the parties' "negotiation and adoption of the settlement terms, based on their familiarity with the law in this practice area and the strengths and weaknesses of their respective positions, suggests the reasonableness of the settlement. This factor clearly favors settlement."); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

### E. The Class Reacted Positively to the Settlement

There were no opt-outs or objections received from any of the Settlement Class Members. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). This positive reaction of the Class to the settlement supports its fairness, and thus this factor weighs in favor of approval. *See Saliba*, 2021 WL 4775105, *4 ("[t]he lack of objections and exclusions strongly support approval."); *In re Apollo Group Inc. Sec. Litig.*, Nos. 04-2147, 2204, 2334, 2012 WL 1378677, *3 (D. Ariz. April 20, 2012) ("There have been no objections from Class Members [], which itself is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate."); *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1294-95 (9th Cir. 1994).

### F. The Rule 23(e) Factors Weigh in Favor of Approval

In addition to the factors traditionally considered by this Circuit, the recently added factors in the Federal Rules weigh in favor of final approval. Specifically, as made clear in the preliminary approval papers, Counsel and the Class Representative have adequately represented the Class. (ECF No. 65 at 9-10.) The relief provided to the Class is impressive. *See* Section (B), above. Finally, the settlement treats Class Members fairly, ensuring that all Class Members receive the same recovery.

In the preliminary approval order, the Court noted that "at the fairness hearing, the

parties should be prepared to present evidence regarding the adequacy of the settlement negotiation process." (ECF No. 69 at 16.)  The settlement here was negotiated in true arm's length fashion.  On November 15, 2022, after months of adversarial litigation, and after the close of discovery and the filing of Plaintiff's Motion for Class Certification, Plaintiff sent Defendant a detailed demand letter, which included not only a monetary demand, but a proposed settlement class and settlement structure.  (Hashmall Decl. ¶ 13.)  Following that, the Parties engaged in negotiations for the following three weeks, culminating in the filing of the notice of settlement on November 8, 2022.  (ECF No. 63.)  In that time, the Parties engaged in arm's length negotiations, including by email, telephone and video conference. (Hashmall Decl. ¶ 14.)  The negotiations included candid disciussions regarding the merits of the case, and competing proposals regarding the relief for the class.  (*Id*.)  Only after relief for the class had been agreed upon did the Parties negotiate the proposed attorneys' fees.  (*Id.* ¶ 15.)

### G. Notice Was Proper

The Court approved the Notice plan and form of Notice at preliminary approval, finding the plan and form to meet the required standard.  (ECF No. 69 at 23.)  The mailed Notice provided information about the settlement terms, the Class Members' rights and the deadlines by which to exercise them, directed the Settlement Class Members to the Settlement Website where important dates and documents were posted, including the full Settlement Agreement.  Class Counsel, as the settlement administrator per ECF No. 69, executed the approved Notice plan, mailing notice to the Settlement Class Members and maintaining and updating the Settlement Website, and reviewing and responding to settlement inquiries on the dedicated voicemail and email lines.  This Notice, as found at preliminary approval, was reasonable and meets the requirements of Fed. R. Civ. P. 23 and due process.  *See*, *e.g.*, *Sonoma Sol LLLP v. Truck Insurance Exchange*, No. 20-69, 2021 WL 5238711, *4 (D. Ariz. Nov. 9, 2021) (where notice was mailed to class members, a phone number and settlement website were maintained for class access, this form and plan of notice was "the best practicable notice," and met "the requirements of

the Federal Rules of Civil Procedure, due process under the Arizona and United States Constitutions, and any other applicable rules or law.").

### III. CONCLUSION

In sum, the settlement provides meaningful relief to the Settlement Class, and the Class has reacted positively to the settlement's terms. Based on the foregoing, the Court should grant final approval.

Dated: January 3, 2024

Respectfully submitted,

BERGER MONTAGUE PC

By: /s/Joseph C. Hashmall
E. Michelle Drake, *pro hac vice*
Joseph C. Hashmall, *pro hac vice*

*Attorneys for Plaintiff*